PEÑA & BALBÁS, Plaintiffs and Appellants, *v.* JULIO TORO, MARSHAL OF THE SECOND MUNICIPAL COURT OF SAN JUAN, Defendant and Appellee.

No. 3488. Argued February 27, 1925.—Decided April 17, 1925.

1. UNLAWFUL DETAINER—LANDLORD AND TENANT—LEASE—EVICTION—CHATTELS —FIXTURES.—In executing a writ of ejectment the marshal must evict the defendant and remove his furniture and chattels; but the eviction only includes the personal property of the defendant and not property fixed to the soil, such as crops or other things that can not be removed from the property.

2. ID.—ID.—ID.—ID.—ID.—ID. — MANDAMUS. — Mandamus is not the remedy in controversies arising in actions of unlawful detainer concerning the removal of things fixed to the soil, but lies only to enforce a specific and clear legal right when such right depends on questions of law.

3. ID.—ID.—ID.—ID.—MINISTERIAL DUTY.—Execution of a writ for the eviction of the defendant and removal of his personal belongings from the property is a ministerial duty imposed by law on the marshal.

ON RECONSIDERATION.

1. APPEAL—RECONSIDERATION. — A motion for reconsideration will be overruled when it contains a reproduction of the fundamental grounds set up in support of the appeal and from its reasoning nothing appears to justify a modification of the original judgment.

2. MANDAMUS—LANDLORD AND TENANT—LEASE—IMPROVEMENTS.—Mandamus is not the remedy for settling controversies between landlord and tenant concerning useful or recreative improvements made by the latter on the leased property.

First District Court of San Juan, Pablo Berga, J. Judgment denying a petition for mandamus. *Affirmed.*

A. *Marín Marién* for the appellants. The *Attorney General* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

This is a proceeding in mandamus for the purpose of compelling the Marshal of the Second Municipal Court of

San Juan to execute a writ of ejectment issued in an action of unlawful detainer.

Peña & Balbás, a partnership engaged in the business, among others, of leasing lands, rented to Ramón González a lot in the ward of Santurce of this city. The lessee built three frame houses on the said lot and thereafter failed to pay the rent, whereupon the appellants brought a summary action of unlawful detainer and recovered a judgment for the eviction of defendant González from the leased land. A writ of ejectment was delivered to the marshal and his return thereon with regard to the fixtures showed only an appraisement of the three houses. The writ was not wholly executed and an *alias* writ was issued, which the marshal returned by certifying "that the eviction of defendant Ramón González as therein ordered from the lot described was done * * * in compliance with the writ of December 22, 1923." Because the marshal had not proceeded to destroy and remove the houses from the lot the appellants asked for and obtained a new order from the municipal court reading as follows:

"Let the order of the court of June 19, 1924, be repeated and the corresponding writ be issued to the marshal.—August 30, 1924. —(Signed) P. Manzano Aviñó, Municipal Judge, Second Division."

The writ was issued and differed from the previous ones only in the inclusion of the following words in the dispositive part: "Placing the said property at the free disposal of the plaintiffs." It hardly can be said that there is any substantial difference between this and the language used in the previous writ as follows: "And the said land shall remain free at the disposal of the plaintiffs." But whatever the difference may be, neither of the writs expressly orders the removal of the houses therein described. However, the theory of the appellant seems to be that as a question of law the eviction extends not only to the per-

son of the defendant, but also to all property of whatever kind.

Section 18 of the Unlawful Detainer Act of March 9, 1905 (Session Laws of 1905, page 184), section 1642 of the Compilation of 1911, reads as follows:

"The fact that the settler or tenant makes claim for work performed, plants or any other thing which can not be removed from the property, shall not be an obstacle to his ejectment. In such case the marshal shall proceed to make the ejectment without delay, and after it has been effected, he shall, at the request of the interested party, proceed to make a valuation of the property at the cost of the claimant, after the appointment of an expert to be designated by the interested parties, by mutual consent; and in case of a disagreement three experts shall be appointed, one by each of the parties and the third by the marshal. After the valuation has been made and the result thereof has been received by the marshal in writing signed by the experts, the interested and said official, it shall be returned to the court with the order of execution; the right being reserved to the defendant to bring an action before the proper court to recover the amount assessed, to which he thinks himself entitled."

[1] This part of the law yields to the purpose for which the Unlawful Detainer Act was enacted and indicates that it is a short and summary proceeding. Thereby the owner of real property obtains prompt execution of his judgment without any pretext on the part of the defendant on account of his claim to property specified by the law or of a similar nature, although the defendant does not remain unprotected. The law undertakes to harmonize the rights of both parties under rules that are just and fair to each. After a judgment for the plaintiff becomes final the plaintiff should be given physical possession of the property, and this is done by evicting the defendant from the property (by force if his attitude makes it necessary) and removing therefrom his goods and chattels. The removal of property refers only to the personal property of the defendant and

not to objects fixed to the soil, such as work performed, crops or other things that can not be removed from the property, as said in section 18, *supra*. Of course, this kind of property, if removed from its foundation, loses its value, and this is the reason why it is necessary to determine its value, the law reserving to the defendant the right to sue for its recovery. This class of property sometimes represents a considerable amount of money and otherwise the plaintiff would be benefited by the work of a defendant whose contract may have expired or who may have the misfortune of being unable to pay the rent or may have trusted that the owner would leave him undisturbed.

[2, 3] The difficulty sometimes encountered in determining whether the mere adherence of a thing to the soil renders it susceptible of being removed without deterioration is a sufficient indication that in controversies of this kind mandamus should not be granted, for its purpose is not to settle a controversy, but simply to enforce a clear and specific legal right which depends entirely on questions of law. *People* v. *Board of Trustees,* 44 N. Y. Sup. 472. We agree, however, that the execution of the writ ordering the eviction of the defendant from the real property and the removal therefrom of his personal property is a ministerial duty imposed upon the marshal by law. Such is the holding in the case of *Fremont* v. *Cripen,* 10 Cal. 212, cited by the appellants. But the question there decided in sustaining that proposition was of a third person who attempted to prevent the execution of the writ of ejectment and it was held that the title sought to be established by the third person was in no way affected by the judgment of eviction, inasmuch as he was not a party to the proceeding. The question in this case is different.

For the foregoing reasons the judgment of the court below should be affirmed.

ON RECONSIDERATION.

On April 30, 1925, Mr. Justice Franco Soto delivered the following opinion of the court:

[1] In their motion for a reconsideration the appellants insist on the main grounds of their appeal and there is nothing in the argument on the motion that would justify this court in varying the conclusions reached in the opinion of April 17, 1925.

[2] Nevertheless, the brief which the appellants filed with their motion merits some consideration in order to make the case clearer, inasmuch as the argument involves the construction of sections 487 and 1476 of the Civil Code, being sections 3557 and 4582 of the Compilation of 1911. These sections read as follows:

"Sec. 487. The usufructuary may make, on the property given in usufruct, whatever improvements he deems proper, either for a useful purpose or for pleasure, provided he does not change its form or substance; but he shall have no right to be indemnified therefor. He may, however, remove the said improvement, if it be possible to do so without damage to the property."

"Sec. 1476. A lessee shall have, with regard to the useful and voluntary improvements, the same rights which are granted a usufructuary."

It is true, as alleged by the appellants, that Manresa (volume 4, page 431, 3rd edition), in commenting on section 487 of the Spanish Civil Code, the counterpart of section 487 of the revised Civil Code, expresses the opinion that among the improvements which can be made without altering the form or substance of real property is the erection of a building for the reason that it can be demolished and the ground left free at the termination of the usufruct. Under the provisions of section 1476, supra, equivalent to section 1573 of the Spanish Civil Code, this may be applied to a lessee, who also may make on the leased prop-

erty such useful or recreative improvements as he may desire, provided that it does not alter the form or substance of the property; but he shall have no right to indemnity for them. Manresa, volume 10, page 648, 3rd edition.

From all this it is deduced that the Civil Code and jurisprudence have established clearly the substantive rights of the owner of the premises in regard to the useful or recreative improvements which the lessee may make thereon, except under a special agreement; but the appellants have been unable to show that those rights may be enforced in an action of unlawful detainer, or still less, considering its special nature, in a mandamus proceeding which was unknown in Spanish procedure as it now exists under our legislation.

Although Manresa and the appellants cite the judgment of the Supreme Court of Spain of April 20, 1901, holding that the building of three sheds by the lessee was a useful improvement for which the usufructuary was entitled to no indemnity under section 487 or the lessee under section 1573, the appellants do not allege that this judgment was rendered in an action of unlawful detainer. Volume 4, page 431. On the same page Manresa cites the judgment of the Supreme Court of Spain of January 16, 1906, according to which the lessee or usufructuary who plants trees on the leased property has no right to fell them and carry them away, because the improvement is one that can not be removed without detriment to the property. This doctrine, however, did not convince Manresa, and all this shows that although the law specifies the kinds of improvements for which no indemnity shall be given by the owner upon the termination of the lease or usufruct, this is a matter susceptible of controversies and diversities of opinion, according to the circumstances of the case or the agreement *sui generis* of the parties, and that, as we have stated, man-

damus is not the adequate remedy for the settlement of such controversies.

It also appears, as the appellants allege, that an ordinary action has been brought by the lessee to recover the value of the houses built on the leased property, and such being the appropriate proceeding for adjusting that class of disputes, in it the appellants have an opportunity to establish their rights, for our decision in this case in no manner prejudges the question of what protection is afforded them by sections 487 and 1476, *supra,* in accordance with the lease contract or the circumstances of the case.

For the foregoing reasons the motion for reconsideration must be overruled.